Good morning, Your Honors. My name is Joseph Meltzer on behalf of the Electrical Workers Trust Fund. The issue raised by this appeal is whether a payment under the Transitional Reinsurance Program of the Affordable Care Act qualifies as a tax under the Tax Refund Statute 28 U.S.C. Section 1346A.1. Our position is set forth in our briefs is that under any way with each other that the exaction is a tax and that we should be able to seek relief in district court. Under the Affordable Care Act, we paid a million dollars into the Transitional Reinsurance Program. Part of that money was paid directly to the general fund. Congress did not call it a tax. Correct, Your Honor. Congress did not use the label tax. It called it a payment and a contribution. It's not collected by the Department of Treasury. Correct. It's paid directly to the government. It was not paid. Part of the money goes into the general fund of the United States. I think $173,000 of our slightly over a million dollars went into the general fund of the U.S. Treasury. It is not called a tax, though Your Honor is correct. It is called a payment and a contribution. So the label and the district court relied solely frankly on a label driven analysis under the NFIB case to say that because Congress did not use the word tax that for statutory purposes were limited in our ability to challenge that tax under the tax reference statute. In your brief you say that the NFIB case doesn't apply because, in your words, it was decided in a way that drive a hold in the ACA Constitution. Do you mean that it was a political decision that we should disregard? No, Your Honor. I don't think it was political. I think they wanted to reach the merits of the case and really what we were trying to point out in our briefing is that because the AIA, the wanted to be able, NFIB essentially says that the exaction, in that case the individual mandate, not an issue here. It said the individual mandate for statutory purposes was one thing and for constitutional purposes was another. So yes, and that was for purposes of the You're not making a constitutional argument. No. You're making a statutory argument. Yes, Your Honor, but yes, but when the Supreme Court moved through NFIB into that part of the analysis, they did use the essential character of the exaction and made the analysis based upon how that individual mandate functioned. What they said was the label for the Anti-Injunction Act purpose precluded them from finding it to be a tax preliminarily, but that's pre-enforcement. So the difference in this case is we take, essentially the issue boils down to can the government tax you outside of Title 26? And I think there is a lot of precedent, including from throughout certain courts in the Supreme Court. You have a case with the Court of Claims. Yes, Your Honor. You filed with the Court of Claims. Yes, Your Honor. You know, it's sort of an old story where something walks and quacks and quacks like a duck. It must be a duck. And this walks and quacks and quacks like a Court of Claims case. Just instinctively, and then look down here at the civil act, and I think you need to 7422 in the prior criteria, the section dealing with the claim of refund talks about no suit should be maintained for recovery of the tax until the claim for refund or credit has been duly filed with the secretary. And as I understand that statutory language, that means the secretary of the treasurer. And the IRS obviously operates under the department of the treasurer. And it would seem more than passing odd to have an exhaustion requirement with the secretary of the treasury as a precondition trying to get a fee refund or contribution refund from HHS. I mean, we're just trying to mix apples and oranges here. Your Honor, I understand that argument. The government has certainly made that argument. I've read the WIADAC decision from the Tenth Circuit. I follow the reasoning. I understand the similarities in language between 1346 on the one hand and 7422 of the revenue code on the other. Here's my response. The government imposed the payment on us, the contribution under the Transitional Reinsurance Program. And I'll get to that point, I promise, Your Honor. If you look at tests of whether, let's say, the Lecky smokeless coal test with the Fourth Circuit, but whether that exaction qualifies as a test. You say the government imposed the payment. Okay, let's... Agencies impose payments all the time. They impose filing fees at the state level when you're going to get your license renewed or you're going to get a new sticker for this or that. Even for trash collection, you have a sticker for trash collection. You have to pay for it. But the fact that an agency imposes a filing fee or a fee in return for services, that doesn't make it what we commonly think of as a tax. And if all of these impositions, which are very commonplace throughout government, are going to be regarded as tax and the subject of a 1346 civil action, we're going to be swamped. Your Honor, respectfully, the reason that you have the four-factor test under Lecky... Your case is the leading edge of a hurricane. Well, respectfully, Your Honor, I think that's not true. And if you apply that test... Well, does that test still apply after NFIB? Yes, Your Honor, I believe it does. I don't think there's anything that I've read NFIB over and over again. I didn't see anything that limits the application of that basic test. And I promise... That might be a test for constitutional purposes, but for statutory purposes, the Supreme Court's decision may have been short and pithy, but they said what they said, and I don't think we're at liberty to disregard it. Well, respectfully, Your Honor, and I want to get to both points, on the Anti-Injunction Act, I 100% would concede that point. I think that's pre-enforcement. I think in this case, we're looking at an exaction that if you apply the Lecky test, which makes it different than filing fees for permits, and the limiting principle that you're worried about, or lack thereof, does not apply, because almost all taxes are issued under Title XXVI. Well, in Pittston-Cole, didn't the court say, and this was after Lecky, that you read 7422 and the Anti-Injunction Act together? Yes, and I don't... Do you apply the same definition? Yes, and I don't think there's... Again, for pre-enforcement purposes, that might be true, but if we have a payment, an exaction, that you can interpret and use that test, and it turns out that it's a tax, and I don't think there's any reasonable interpretation... I don't understand where this is going, because I don't understand, under your theory, what's a tax and what isn't a tax. And it's, you know, jurisdictional rules are supposed to be crystal clear, so we don't get into a big swamp right at the outset of a case. And I don't understand. You've got some sort of multi-factor test, I guess, as to whether something is a tax, and when it is a tax, and is this fee a tax? Is that contribution not a tax? And I don't want to... It's going to be... It is going to be a very confused situation, whereas the straightforward response is that a tax is something collected by the Internal Revenue Service under Title 26 of the Code. Then we have a jurisdictional rule that's clear. Under your thing, you're going to be debating forever what factors make something a tax. And it just turns the whole system without ever getting closer to the bottom line, which is whether a tax refund is deserved or not. Your Honor, the simplicity argument, the government raised the simplicity argument in their papers. I understand you want to have jurisdictional principles that make it easy to follow and for the courts to apply, but there has to be balance against our rights as taxpayers and people who are forced to make this contribution under the Act. And if you do that, if you find that an exaction that otherwise... And there is no analysis at the district court level, but if you find that an exaction that otherwise qualifies as a tax limits our ability and we can only proceed with relief under the Court of Claims, then we're left with constitutional... What's wrong with your going to the Court of Claims?  You're not being shut out of court. You can go to the Court of Claims. You have gone to the Court of Claims. Yes and no, Your Honor. We have our day in court, but they're not equivalents. We do not get a jury trial in the Court of Claims. That's a huge difference. Our Seventh Amendment rights are basically abridged by interpreting the tax refund statute that narrow. We don't... These are constitutional claims. They're different proofs. It's an entirely... And we're the litigant. We're the aggrieved plaintiff. We chose our form and consistent with the statute. We would present this in a much cleaner and straightforward way as a tax. People would understand that. We would have a right to a jury trial. We don't have to put this as an exaction which constitutes a taking by the government. That's an entirely different litigation. So this is not apples to apples. And if it was, then we wouldn't be here. Then we would have moved to the Court of Claims. Well, in order to bring that claim under 1346 or 7422, both of those statutes are identically worded, and they are restricted to recoveries of an internal revenue tax related items. Why is what you have here an internal revenue tax? Because it's money that is raised by the government. It's a pecuniary burden for a public purpose. It's imposed by Congress under its taxing authority. It's not a tariff or something? No, it's not an external. It's not a tariff. It's not a custom duty. If you look at the Sixth Circuit's opinion in Verizon Coal, that's exactly what they say. And they cite the government's brief where the government outlines the difference, and the government wrote in that case that internal revenue means revenue that's generated within the United States. And it doesn't say anywhere that they are generated by Title 26 taxes. That limiting fact is being read into the statute. And, you know, we would argue that the plain text of the statute doesn't say that. The objective of the statute, which we just talked about, including the 1954 amendment, which is an important point for us, and the government cites this. I'm not reading anything into this because of the language, the exhaustion language. It says, until a claim for refund or credit has been duly filed with the Secretary. That means the Secretary of the Treasury, not the Secretary of Homeland Security or HHS or whatever, because that's overdue. The claim for refund statute is in Title 26. And there's no other way to read these statutes unless you take 7422 and 1346 together. That sets forth the civil cause of action. It sets forth the requirement of the exhaustion. And you have it on a very simple track. Your Honor, respectfully, if you take 7422 and look at it as within Title 26 that requires exhaustion, that makes perfect sense because almost all of the taxes levied by the government are levied under Title 26. But that doesn't mean it's exclusive. Not all of them are. In fact, there's plenty of courts, like Verizon Coal under Title 30 found that to be an exaction. There's plenty of exactions that even the Fourth Circuit in the Ringley case found an exaction under Title 30 to be a tax. So if you can find exactions that fall outside of Title 26 to be taxes, we shouldn't be limited in our ability to use a tax refund statute. And the exhaustion requirement, while very important, is especially important for Title 26 taxes because, and we did a lot of research over the last two weeks, upwards of 99% of taxes are imposed under Title 26. So if you didn't have that exhaustion. When I read it collected under the Internal Revenue Coverage, that certainly suggests Title 26 to me. But that's under 7422. That's not under 1346. So you say the terms, even though they were enacted together, 1921 Revenue Act, those two identical terms have different meanings, 7422 and 1346. Yeah, I think that 7422 is encompassed within Title 26. The tax refund statute is in Title 28. There's no, unless you read again, and I'm out of time. And our canon of construction normally is that if Congress enacts a statute, particularly at the same time and the same act, and uses the identical terms, that those terms are to be interpreted identically. That's our normal canon of construction. Your Honor, these are, if you look at it, and the legislative history is well stated in both sets of briefing. The purpose behind the tax refund statute is not the same as the claim for refund statute in Title 26. It gives a broader rights to taxpayers, and in any event, if you find this narrow construction of what the tax refund statute is, you're essentially saying there can't be taxes outside of Title 26, otherwise you have to challenge them on a constitutional basis in the Court of Claims. And even if you look at the 1954 amendment, you can't reconcile that, because it's not the same type of, it's not the same claim. Thank you, Mr. Miller. Thank you very much. We appreciate it. Ms. Schoen. Good morning. May it please the Court, Karen Schoen on behalf of the government. Can you raise that just a minute? Sorry. I'll be sure that I hear you. Thank you so much. Good morning. If I may, I'd like to just pick up where Judge Agee left off. I mean, I think you do have to read the two provisions together, and I think the fact that both the claim for refund statute, Section 7422, and the tax refund statute, Section 1346A1, were enacted together in the 1921 Act and are now codified in different places, the fact that they were both enacted in the same 1921 Act, I think leads one to the conclusion that the same terms do, in fact, mean the same thing. You know, there is this normal presumption that when the same terms are used in the same act, albeit in different sections of the act, they mean the same thing, and there's nothing in that 1921 Revenue Act or anything thereafter that suggests that Congress meant different things. And so I think you do have to read Section 1346A1 as part of this comprehensive scheme that Congress developed for taxpayers to challenge taxes under the internal revenue laws. I think, you know, there were a couple of other things that I'd like to just touch on, if I may. It was asked whether LECI still remains good law under NFIB, and I would respectfully disagree with counsel for plaintiff. I think, you know, at least to the extent that LECI applied a functional test, that doesn't apply when we're dealing with a jurisdictional statute. I think the Supreme Court was very clear in NFIB, excuse me, that when you're dealing with Congress's constitutional authority, you do look at the function of an exaction, because Congress can't expand its authority under the Constitution just by calling something one thing versus another. But when you're dealing with something like the Affordable Care Act and jurisdictional statutes that are creatures of Congress's own creation, then the label that Congress does apply, the label that Congress applies does matter, and that's what we look at. And I think, you know, one other point, you know, plaintiff's counsel has emphasized that, you know, if you accept our interpretation and the interpretation that the Tenth Circuit adopted, that it would limit their ability to bring suit in district court. But it's important to just take a step back here. What they're really challenging is a rule that HHS issued that defined a contributing entity for purposes of this transitional reinsurance program. It was engaged in notice and comment rulemaking, of which plaintiffs participated and submitted comments. And the normal way that you challenge a rule like that is through an APA action in district court. But plaintiffs didn't do that. They could have brought an action before they made payment, before they made any payment, and sought to set aside the rule as applied to them and join any collection of the payment. But they didn't do that. They waited, and they went ahead and made the payment. And now they're seeking to invoke the jurisdiction under the tax refund statute, which simply doesn't apply. If the panel has any questions, I'd be happy to answer them. Okay. Thank you, Your Honor. Okay. Mr. Melson. I'll be brief, Your Honor. One of the points I wanted to respond to is counsel's final point that we chose to pay this payment rather than challenge it pre-enforcement. This payment was required by Congress to stabilize the health insurance market. If you look at everything that surrounded the transitional reinsurance program, the language was we need to avoid death spirals. We need to avoid crashing the health insurance market. You know, adverse selection could result in health insurance premiums rising so dramatically that insurers will walk out of the marketplace. Nothing in the way Congress spoke about this act or in their enforcement or their decision to require these contributions suggested that we could withhold payment and then challenge it preemptively. In fact, everything suggested that this was important. And remember, that was for three years after the passage of the Affordable Care Act. So for the first three years, if we didn't pay it and all taxpayers withheld their money, they wouldn't have been able to accomplish their goal of stabilizing the insurance market. This was an integral part of what they were trying to do. They did it quickly. They needed to, as I said, they needed to stabilize the premium market from adverse selection and other factors, and they made us pay it. There was no suggestion at any point that we could withhold this. And the government makes that statement, I believe, on page 23 of their brief, that this wouldn't have been covered by the Anti-Injunction Act. Frankly, that seems like a disingenuous argument. They required us to make this payment. We did make it, and now we're seeking the remedy that we think we should be afforded under the tax refund statute. As for the comprehensive scheme, I understand that argument. I understand the link between 7422 and 1346. But, again, and if you look at other cases, like there's a Supreme Court case, United States versus New York, where they find an exaction, a tax for purposes of the bankruptcy code. Well, and that's a Title 40 exaction. If you can have exactions that are taxes outside of Title 26, then we shouldn't be precluded from filing a case in our own district court with a right to a jury trial. It's not coextensive that you have to take those to the claim for refund statute in Title 26 and superimpose the Title 26 part requirement onto Title 28's tax refund statute. We think that is unnecessary limitation. The large, overwhelming majority of exactions that are taxes imposed come under Title 26 and would therefore be subject to that exhaustion requirement. And we think doing that here unnecessarily limits our ability as a taxpayer, because I think this exaction is a tax, to bring the type of action and seek the type of relief that the statute preaches. Thank you, sir. Thank you, Your Honor. We would like to find counsel and come down and meet you, and then we'll take a brief recess.
judges: J. Harvie Wilkinson III, G. Steven Agee, James P. Jones